5-721 Bergin v. New York State Unified Court System. Okay, is it Mr. Sijinsky? Yes, good morning, Your Honors. May it please the Court, my name is... Good morning. Counsel, you have two minutes reserved for a rebuttal. Correct. Go ahead. Correct. May it please the Court, my name is Michael Sijinsky. I'm an attorney with the Office of Court Administration. On behalf of the appellate and defendant here at the Unified Court System, I have been litigating and involved with this case since its commencement in the fall of 2022. This case and this appeal is about giving guidance to employers who are reviewing religious accommodation requests under Title VII and also reaffirming the longstanding burden on plaintiff employees that they have to engage in that process in good faith and respond to inquiries by the employers. We submit to the Court that... So the interactive process in the ADA context is typically about the nature of the accommodation and not about whether or not, in the religious context, that there is a bona fide religious belief requiring accommodation. Is it fair to say? It's yes, and it's a similar process, but there's actually case law from this Court going back all the way to the 1980s talking about the fact that employers have a right to engage in this process. They have a right to probe the sincerity of the request and expect that the person making the request, whether it's an employee or otherwise, engage in that process faithfully and not just state bare allegations of religious belief. They actually have to demonstrate a consistency with their beliefs and how they practice it. I get that, but it seems like an odd argument to make when you've conceded the first prong of the test. You've conceded the sincerity of her religious belief here, no? No, Your Honor, and I don't know where that mistake comes from. We have never conceded sincerity. I believe that's part of the district court's mistake, saying that we conceded sincerity. Our position from the very beginning is we... Are you arguing that in your brief? I didn't see anywhere in your brief where you took issue with the district court on that. We have argued it. It's not in our appellate brief, but again, let me explain, Your Honor. We cannot judge sincerity if we do not have all the information we need as the employer. They go hand in hand. Our position has always been we cannot test Ms. Bergen's sincerity because she did not answer our questions. Had we argued that she lacked sincerity, the response, of course, would have been, well, what are you basing the lack of sincerity on? You don't have the answers to the questions. So, again, our position is we can't judge sincerity of Ms. Bergen's request or any employee's request if they don't answer our questions. And as I was saying a moment ago, the courts have always found that the employers can probe for sincerity. And what about the initial form raised any doubt about her sincerity? I'll grant you she makes reference to ethics, but the form calls upon her to swear or affirm that vaccination is contrary to my sincerely held religious beliefs and practices, to which she answers yes. Her own writing makes reference to her sincere devotion to God and her faith, to protecting her religious liberties, that she's sincerely devoted to God, his word, and the Holy Trinity, that she's been a practicing devoted servant of Christ her entire life, that taking a vaccine disobeys her religious faith. She attaches two or three pages of scriptural citations and quotations, and she attaches a personalized and signed letter from her pastor. What about that raises an ambiguity and gives you the ‑‑ As you said at the beginning of your question, she raises a lot of issues with taking the vaccine. Some have no religious basis at all. But hasn't this court held that where an employee puts forth both religious and nonreligious, that that doesn't cast doubt on the religious? I want to give you a citation to what I was talking about. This case is from the 1980s. Mason v. General Brown Central School District at 851 S. 2nd 47. And that's from this court in 1988. And it has to do not with an employee requesting immunizations or exemption, but actually parents from required immunizations for their children. And in that plaintiff's application or request, they talk about homeopathic remedies and natural healing. And this court found that it was totally appropriate for the school district to inquire further and to make that determination. Is this a religious‑based belief that you don't want to immunize your children, or is it something more? And so had Ms. Bergen's original submission maybe only made reference to religion and didn't include all these other nonreligious bases, that might be a basis for granting on the original submission. But instead what the court did, Judge Kogan did, he decided I'm not going to accept the agency's expertise. I'm going to substitute my judgment for the agency, which is also inappropriate. But how do you square that with the decisions of this court that hold squarely, as I just said, that coincidence of religious and secular claims in no way extinguishes the way it appropriately accorded the religious one? In other words, quotations I just read to you certainly sound to me like she made a religious objection, the mere fact that she also, and by the way, her letter says, in addition I have ethical qualms with this, the fact that she provided additional reasons doesn't cast doubt on the sincerity of the religious ones, does it? But what the district court has said, we don't get to include the second part of her application. When she refuses to answer our very simple questions in the supplemental, she raises a doubt as to what ‑‑ Supplemental request was sent in light of the information included that Judge Furman's just recounted in the initial application. So virtually everyone who made, virtually every employee who made a religious exemption application was asked to complete the supplemental, with some limited exceptions. It's because they either invoked the idea that they were opposed to the fetal stem cell use and the development of the vaccines, or they were opposed to the idea, or they had an issue with bodily integrity under the religion. One or the other, sometimes both. Ms. Bergen invoked both. We asked her to complete both parts of the supplemental. So is it the representation that everyone, no matter what one says about their religious belief initially, if they indicate some other basis for objection to vaccine, that everyone gets the supplemental forms? Virtually everyone except for ‑‑ You're saying virtually. Well, because some people didn't lay out a religious position at all. But if they invoked one of these two reasons, they were asked. So of the appropriate ‑‑ So I think then, just to repeat my question, if someone invokes religion sufficiently and another basis for objection to the vaccine, does everyone get the supplemental forms? Yes. Is that in the record? It is in the record. And if you look at Mr. Berry's deposition, which is at the record 188 to 191, there's a colloquy between Mr. Wachowski and Mr. Berry about why we asked these people to ‑‑ why we asked our employees to do the supplemental affidavit. And he says in the very first question of those four pages, we asked virtually everyone so long as they invoked one of these two reasons. And then they got into specifically about Ms. Bergen's application. And this comment, this perfectly adequate comment that's been attributed to him, which he says does not go to whether or not her original submission is perfectly adequate to be granted. It's perfectly adequate to get her to round two, meaning it's perfectly adequate for her to have been asked to complete the supplemental affidavit. And that colloquy not just does one or two words that plaintiff and the district court have attached to this, but that entire four pages I think is really important for the court to look at. And what's the reason, what's the rationale, if religious basis for objection to the vaccine are fully articulated and something else, what is the rationale for requiring additional information? Just to probe sincerity and consistency. Consistency is a factor in sincerity. So if you look at our questions in the supplemental ‑‑ But so if somebody just provides the first set of information, this is the basis for my religious belief, but doesn't then articulate an additional grounds for objection, you would not probe sincerity? I'm not sure I'm following you. If you're saying they don't invoke one of the two reasons? In other words, if they just put forward a religious objection and didn't mix it with a nonreligious objection, do they also get the supplemental questions?  Yes. Everyone, again, with the limited exception of people who submitted a religious application but didn't actually state any religious beliefs, which there were some people that did that. They just said, oh, I'm afraid of the vaccine and I don't think I should have to take it, but didn't actually invoke religion. You're saying that those just get denied? Those were just denied in the very first instance when they first came in in September of 2021. But the vast majority. Does anyone get granted without the additional information? I believe there were about two or three, literally two or three people, because we recognized that they were, I don't know what the sect is, I want to say it's Christian scientists, but longstanding, I'm a Christian scientist, or whatever the religious sect was, we knew off the bat that those individuals and their religious belief, long aversion to medical procedures and immunizations and stuff. But again, I'm not sure it was Christian scientists, but it was one of those sects that is well known to be averse to medical procedures and immunizations. And literally it was only two or three people. And their sincerity, even though their religion in general would hold that belief, there was no probing of anyone who claimed that for consistency. I don't know the answer to that. Again, I was told that two or three people were granted off the bat. But the hundreds and hundreds that made the religious request, so long as they invoked a religious belief on their original application, were asked to complete the supplemental. Can I ask you about Abercrombie? Yes. I think there's a little bit of ships passing in the night in the briefing. We've got circuit precedent in the night case, and then post-Abercrombie, Rousseau, which in dicta refers to the three-part test. Abercrombie comes down in the interim and I think does a couple of things. But what I want to understand is what you think it does, and how does it interplay with the existing precedent, or does it abrogate it in some way? Abercrombie case, the Supreme Court says we're going to go back to the language of Title VII. The three-prong analysis, which includes actual knowledge, cannot be found in Title VII. We're getting rid of the actual knowledge prong of this analysis, and we're relying, we're going back to the because of phrase in Title VII to find that there has to be some motivating factor. The Supreme Court says it doesn't necessarily have to be discriminatory, but there has to be a motivating factor. It says, and this is unanimous amongst even Justice Thomas in his dissent, the one thing they all agree on is there's no freestanding fair-to-accommodate claim under Title VII. It's either disparate treatment or disparate impact. And for these fair-to-accommodate type claims, they fall under disparate treatment. And if it's disparate treatment, there has to be a motivating factor. Now, Judge Kogan errs. He says that case doesn't apply here because I have substituted my judgment and found that you, UCS, have actual knowledge. In the Abercrombie case, they did not have actual knowledge, so I don't think Abercrombie applies. That is not appropriate. That is an error. Abercrombie tells us expressly that notice that knowledge and motivation are different. Yes. One could be evidence of the other, but they are different. Yes. And so I think part of the confusion is, to the extent our test, the Knight test, has a sort of standing knowledge requirement, what do we – and so we're still trying to fit that in, I think, reflected in whether you were on notice of the sincerity of her beliefs or the like. So I'm still trying to figure out, if you were writing the test anew on a clean slate in light of Abercrombie, what would you say the test is? So I think this Court's already written it. If you look at the Lohmann case from this Court in 2020. Which is in summary order, but I agree with you that it's a helpful – a very helpful articulation of the relevant test. It's followed again by this Court last year in Gurka. That's G-U – excuse me, G-I-U-R-C-A, which I believe is also summary order. But nevertheless, it rephrases the test from the old three-prong to the two-factor. Which is what other circuits have done that have considered this expression. Exactly. Other circuits have done it as well. They've all acknowledged that Abercrombie is a new way of looking at failure to accommodate claims under Title VII. Can I ask you, even if that is the better way to articulate it, even if Judge Kogan was wrong in saying that Abercrombie doesn't apply, isn't it the case that if you meet the three-part tests from Knight and Baker and Russo, that you necessarily also are showing that it was because of or motivated? That is to say, the three prongs are, one, bona fide religious belief. Two, informed employers. And three, was disciplined for failure to comply with the conflicting employment requirement. The third prong, doesn't that necessarily mean that it was motivated if you were disciplined because of the conflict? I think what you're saying, as an exception, would swallow the rule. There has to be some showing of a motivating factor. And traditionally, the way courts have always dealt with treatment cases, it's normally been discriminatory animus. Now, the Supreme Court said in Abercrombie that discriminatory animus isn't required, but there has to be some showing of a motivating factor. But in other words, there's no doubt here. She was terminated because she refused to comply with the vaccination requirement.  And she put you on notice, let's assume for the sake of argument, that that was because it conflicted with her bona fide religious belief. So doesn't it follow necessarily because she met the third prong that it was motivated by her religious belief? No, because that suggests that any policy that conflicts with a religious belief, excuse me, any policy of an employer that conflicts with religious beliefs, then they per se have a motivation to deny that request. She was not terminated because of her religious belief. She was terminated because she didn't comply with the policy. She didn't comply with the policy. Now, she alleges because she has a religious belief. We say you didn't give us enough information about it. And how do you square that with the end of Abercrombie where Justice Scalia talks about how, you know, under Title VII because it's not just prohibiting discrimination, but it actually gives religion a preferred, a favored status. That is to say it requires accommodation. It's not just prohibiting discrimination. Are you reading the accommodation part out of the statute then? We gave accommodations. Anyone who submitted a religious application. Well, you didn't give her an accommodation. But that doesn't mean that we weren't willing to. We granted over 500 applications for religious requests, which is more than half of the ones we received by our employees. I wonder if we look at the Lohman articulation, if that helps elucidate the distinction that you're trying to draw. So Lohman says, in a case involving alleged discrimination, a plaintiff may satisfy her burden by plausibly alleging that, one, she actually requires an accommodation of her religious practice, and two, that the employer's desire to avoid the actual, I'm paraphrasing a little bit, the actually required prospective accommodation was a motivating factor in an adverse employment decision. And what I understand you to be saying is there's a disputed issue as to whether your desire to avoid the actually required prospective accommodation was what motivated you to fire her or her failure to provide the procedurally requested follow-up information. If that's disputed, you would say under that second prong of Lohman, certainly summary judgment couldn't have been granted for her. Am I understanding the argument? Well, absolutely. That's absolutely right. We had no desire, as this Court frames it in Lohman, we had no desire to deny the accommodation. We were actively seeking to give these accommodations to our employees. We established this process. We made it very simple. The forms were short. You could submit your application online. We put together a panel of a dozen people into two groups who spent a lot of their time during work hours reviewing these applications, and as I said a moment ago, it's in the record at 279, we granted over 60% of the religious applications. All we needed the employee to do was answer a few simple questions in the supplemental so we could understand how the proposed, excuse me, how their religious belief, how they interacted with their life and how they practiced it. It was not an onerous burden for the employees. Again, we were not desiring, we had no motivation to deny these. We were simply trying to fulfill our mission as the court system in New York State to keep our courts open and safe. I want to express again, we are the third branch of New York State government. We have 16,000 employees. The policy was mandated for all non-judicial and judicial employees. We got approximately 1,200 applications, 1,000 religious, approximately 200 for medical reasons. Of that 16,000, we put together this panel that spent hours of every week reviewing these applications, meeting in meetings, voting on it. If you were denied, if an employee was denied after submitting their supplemental application by one of the subgroups, it went to a quorum of the full committee. There are many opportunities for an employee to have their application granted. Ms. Bergens was denied, and it's the only thing in the record. Her application was denied because she didn't answer the questions. Can I ask just, and then unless Judge Furman has anything further, we'll save additional questions for rebuttal, but I just wonder how far that argument goes. I understand it here, but I wonder if there's a point at which the procedural requirements themselves could be seen as at least evidence of motivation by animus or the like. So if you, I mean, you say, well, we asked for the follow-up forms, and then we would make, and because she didn't give those, we can't show that it was the desire to not accommodate that was the motivation for the termination. What if you require, and just trying to think this through for other cases, what if you required, you know, 20 sworn affidavits as to it or 100-page explanation? Or at some point, doesn't the procedural requirement become evidence of improper motivation? Well, based on your hypothetical, I suppose it could, but that's not the situation here. We had very simple forms. Most of our employees filled it out without objection. Ms. Bergen, I believe, stated she didn't want to divulge medical information on her form. So it could. It could. I guess then the question is, for purposes of summary judgment, now thinking about your motion for summary judgment, is it undisputed on the record that the follow-up information was sought only and could be understood only to be seeking clarification as to sincerity? I believe that's correct. Every court that had the opportunity to look at our process before the federal court in this case found that our process was reasonable. And I don't believe it's in our appellate brief, but it's certainly in our briefs and motion for summary judgment. This was reviewed by the state courts multiple times. It's reviewed by federal courts, and they all found that our process was reasonable. I believe one court even said, if this process isn't reasonable, I don't know what a reasonable process is. And I'll add that our process was designed to follow the district court of the Southern District's process. We copied it from them. So if our process was unreasonable. Could we sometimes reverse the sentence? Well, that might be. I'm just saying we didn't make this up out of whole cloth. We spent a lot of time making sure that we were doing right by our employees. Can I ask, and then I really will let you sit down. I think you're counsel in Bikert. Is that right? B-E-I-C-K-E-R-T? No, I am not, Your Honor. You're not? Okay. I am counsel in many other COVID-19 cases, though. Oh, that's right. That's your assistant department of education. I have the question there. So this is a question of whether we would need to hold for that. That was argued on January 6th, whether a Title VII plaintiff alleged a bona fide religious belief in opposition to a vaccine mandate. So you're not aware of that case? I'm not. I would love to know the name of it, though. Is it Bikert? Bikert, B-E-I-C-K-E-R-T, docket numbers 23-7274, argued on January 6th. Okay. All right. Thank you. Thank you. And you have two minutes for rebuttal. Thank you. We will hear from counsel Warshawski, if I'm saying that correctly. Good morning, Your Honors. Just a quick note, the Bikert case was my appeal. That was argued in January. Any one of you was in the case. Of 25. If I may begin with the Abercrombie case, because I do believe there's a lot of confusion here, and we know that the Supreme Court's decision in Abercrombie did not overturn the existing framework for reasonable accommodation claims for at least three reasons. The first reason is, in the Abercrombie decision itself, the Supreme Court did not tell us that it was going to overturn decades of precedent. We have precedent in the Hardison decision, and we have precedent in the Filbrook decision, where the Supreme Court said as a matter of textual interpretation that when Congress amended the definition of religion, that incorporated a duty to reasonably accommodate. So whatever the verbiage might be in dicta in Abercrombie, the Supreme Court recognized in both Hardison and in Filbrook that there's a statutory basis for a separate reasonable accommodation claim, and nothing in Abercrombie suggests that they're reversing their prior interpretation of the statute. The second reason we know that it didn't... What portion of Abercrombie is dicta, are you asserting? I mean, Abercrombie articulates that the test is straightforward, and an employer may not make an applicant's religious practice a factor in employment decisions. Isn't that the holding? And doesn't that suggest that... Well, that's the holding. ...the moment is the correct articulation of the test, even in this context? No, I don't think so. And that's exactly the second reason why I think Abercrombie doesn't reach the conclusion that the defendant would like it to, because the issue presented and the holding in Abercrombie were, in fact, not a reasonable accommodation case. This is not a case with an employee who has a religious belief that conflicts with a policy and requests an accommodation. The case law is very clear. The employer has a duty to accommodate unless there's an undue hardship. This is a failure-to-hire case. So what Justice Scalia said is there has to be a discriminatory motive in a failure-to-hire case. The motive in this case was not anti-religion. There's no indication in the record that they didn't hire her because she was Muslim. The illegal motive was a desire not to provide a accommodation, which is also a duty under the statute. So Justice Scalia made it very clear that if an employer is motivated by a desire to avoid giving an accommodation and, as a result, does not hire an employee, that is a discriminatory motive, just like I didn't hire you because you're black or you're female or you have a particular religion. This is a failure-to-hire case, and so it had to be explained in that context. But, Sue, why wouldn't Abercrombie's language that the employer's desire to avoid the prospective accommodation was a motivating factor in the employment decision? Why wouldn't that apply equally here? You're saying it does or it doesn't? That does not apply to the Bergen case. Bergen case is not a failure-to-hire with respect to an employee that's being brought in. Why wouldn't a termination decision be the same test? Well, it's not the same because the decision in Abercrombie was the decision whether or not to hire an applicant and why the employer decided not to. The decision in Bergen is whether or not to grant a reasonable accommodation. Now, that was a question in Abercrombie. One of the questions that came up is, well, in the Tenth Circuit, they said, the plaintiff didn't actually request a reasonable accommodation, so we're not going to hold the employer to that standard. And the Supreme Court said, no, no, no, that doesn't work like that in a failure-to-hire context if the employer is motivated not to want to give an accommodation. But this is a different box. A reasonable accommodation claim has been identified as a separate freestanding box that is incorporated into Title VII through the religious definition. That's in Hardison. It's in Philbrook. And this is the most important point, number three. It was reaffirmed in the Groff decision. So in 2023, the Supreme Court made it very clear that under Title VII, employers have a duty to reasonably accommodate employees with conflicting religious beliefs or practices unless there's an undue hardship. But the issue in Groff was the undue burden, undue hardship, right? I mean, how does the whole – I mean, if you're talking about dicta, that strikes me as pure dicta in Groff because it presumes that the first part of the test is satisfied. Well, it doesn't – well, it certainly doesn't – it doesn't hint in Groff that in addition to undue hardship there is some kind of a motive. See, what the defendant is saying here in a reasonable accommodation context, let's put it in the context of an existing employee requesting an accommodation to an existing policy, say, a Jewish employee who wants to get the Sabbath off. What the defendant is saying is if we deny that accommodation, we're not liable unless the plaintiff can prove that we had a motive to deny the accommodation. And that has nothing to do with undue hardship. But that's not the law. That's not the law as articulated in Hardison. It's not the law that's articulated in Philbrook. It's certainly not the law that's suggested and articulated in Groff. So your position, just to be clear, is that Abercrombie does not apply in this context and Judge Kogan was right on that score, not that it's essentially baked into the three-prong test that the Court has applied in other cases. Is that correct? That is absolutely correct. And I would say, however, that while Justice Scalia's decision, I think, is a little confusing, there are parts of the decision that point right back to the freestanding independent duty to reasonably accommodate. So if we had the same facts but in a failure-to-hire situation, you're saying this wouldn't make out a claim? So if you have somebody, so as part of the hiring process, and I think this was true in a lot of employment contexts, you either need to have proof of vaccination or you need to put forward a religious or medical exemption. And so assume everything that happened here was exactly the same. Tell me how we would analyze that and whether it would come out differently under your theory. Absolutely, because I have two of those cases. Abercrombie absolutely squarely applies to the situation where an employee with a religious belief or practice applies for a position and is denied because the employer does not want to accommodate that belief or practice. Right, but I'm saying assume the same facts here. So what happens is to do the hiring, they say fill out this form. The prospective employee fills out the form. They say we need additional information by this date, and the employee doesn't fill out those forms by that date. They say we're not hiring you. Then what you see there, I think, is it certainly wouldn't be undisputed as to whether the motivation was a desire to failure to accommodate or the motivation was the failure of the employee to meet the procedural requirement, right? Perhaps. So the exact same facts as this case in the failure to hire context, you would say that claim would fail. I think not necessarily because I think there are two separate issues in the failure to hire context. The first issue is why the person wasn't hired because once they're hired, now there's a duty to accommodate unless there's an undue hardship. In my cases, for example, I have two cases. Oh, right, but if the employee says, well, I wasn't hired because they didn't want to accommodate my religious beliefs. Under Abercrombie, how does that get analyzed? Let's make the hypothetical harder. Let's say the employer says you're hired subject to your satisfying one additional requirement. That requirement is you need to show proof of vaccination or you need to qualify for a religious exemption. Here are the forms you fill out, and they provide the exact same forms that Ms. Bergen was provided here, and the prospective employee fills them out in the exact same way that Ms. Bergen says, and they say, nope, you're not hired anymore. So we've isolated that the cause is the lack of vaccination and lack of accommodation. Claim or no claim? So in that situation, there is a claim because in that situation, once they've made the job offer, their duty to accommodate was triggered, and now you go into the accommodation context. Well, I think the hypo was you will get a job offer if you fill out these forms. Okay, and she, so then the question is simply, did the employee, A, have a sincerely held religious belief or practice that conflicted with the vaccination requirement? B, did they advise the employer of that? C, did the employer make any attempt or did the employer refuse or fail to accommodate? And if so, that's a violation unless the employer can prove undue hardship. Now, that was one of the things that. So you're applying the pre-Abercrombie test? Well, I don't think it's pre or it's also post-Abercrombie. I think Abercrombie is a specific context in the failure to hire with a specific kind of motivation, and the issue was is not wanting to give an accommodation the same kind of animus as not wanting to hire someone because they're black, not wanting to hire someone because they're Muslim. A dispute about whether the motive was not wanting to give an accommodation to a sincerely held religious belief or the dispute was not wanting to give an accommodation because under our procedures, sincerity has not been established. That would presumably make it beyond summary judgment if there were such a dispute, wouldn't it? If there were that dispute, and that's what's unique about this case. This case from the very beginning was not litigated on that point. The defendant never disputed that Jessica Bergen has a sincerely held religious belief. There's answers in the answer. There are answers to interrogatories. I understand the contention to be that they didn't have the information to make that assessment, that they requested that. And maybe you dispute this, but let's assume the truth of their assertion. We didn't have sufficient information to make a sincerity determination. That's what motivated us not to allow the accommodation. Does that make out a claim? Yes, it does, because they denied the accommodation. At the end of the day, they gave her a questionnaire. She responded to the questionnaire. She gave them answers they didn't like, and they denied her accommodation. So the question is not to She didn't respond to the second questionnaire, right? Well, she responded to it. She just didn't answer all the particular questions. What she said was, I'm not going to answer these specific questions for the reason of medical privacy, but I'm going to tell you why. So they didn't like those answers, and as a result, they denied her, as they were certainly entitled to do. So they were entitled to deny her, and we are entitled to challenge that, which we did. And so in the court context, we're trying to bring this claim. Right, and you were allowed to bring the claim, and we're at summary judgment, and you prevailed on summary judgment. And I'm just trying to isolate if there It sounds like you think there would be a factual dispute on the same facts in the failure-to-hire context, but not in the failure-to-hire because of a religious accommodation request, where the employer says we don't have enough information to establish sincerity. Then there would be a dispute as to whether it was a desire not to accommodate a sincerely held belief that forms the basis for the denial. And I don't yet understand, and I want to hear if that's right, if that would be a disputed fact for purposes of a failure-to-hire claim, why wouldn't it be a disputed fact for purposes of a termination claim, everything else being exactly equal? So it's a disputed fact if the defendant, in fact, disputes it. And in this particular litigation, the defendant didn't. So from the very beginning of this case, the defendant never disputed that Jessica Bergen, in fact, has a sincerely held religious belief. They never disputed that she conveyed that religious belief. Right. Their position is they didn't have the information to make the assessment. So they're not saying it's sincere or not sincere. We didn't have the information requested to make the assessment. That's how I understand it. And that has been consistent throughout, hasn't it? I guess, do you think they made that argument? Whether you think it's the same or not, you can turn to. But did they make the argument below that we didn't have sufficient information to assess sincerity? They've consistently made the argument that she was denied because she didn't check all the boxes on the second questionnaire, yes. But they've never actually argued that she lacks a sincerely held religious belief. Yeah, you changed the – so from the first thing you said, that they argued that she didn't check the boxes, is there a reasonable inference from that that they refused the accommodation on the basis of a lack of information of sincerity? Is that an available inference? I think it's a possible inference, but I think this case has always been litigated really on two different issues. It's been litigated on the informed prong, whether she informed the employer. Which is why it matters if that goes away. Well, that does seem to go away in some ways under Abercrombie, but also with a focus then on the motivation question. Do you disagree with the Lowman's articulation of the termination? I do, yes. And that's just because you think failure to hire is different than termination? Absolutely. Do you think the Lowman test properly articulates the test in the failure to hire context? Well, in a failure to hire context, the general – in a failure to hire context, the general requirement on the plaintiff is to show a discriminatory motive. The employer's desire not to provide an accommodation can be such a discriminatory motive. So, yes, in a failure to hire context, your first obligation as an employer – And how is that rooted in the language of the statute, which makes it unlawful to, quote, fail or refuse to hire or to discharge any individual, et cetera, et cetera, et cetera? In other words, it's the same statute that gives rise to a cause of action for hiring or for firing. It does. But you're suggesting that there's a different test that would apply in each instance. How does that – how can we square that with the language of the statute? There's a different test with respect to a request for a reasonable accommodation in the workplace. Once you're an employee – And where is that – to the extent that we're interpreting a statute, how would you base that on the language of the statute? Absolutely. That was imported into the statute by Congress in the definition of religion in 1972. The Supreme Court in Hardison said the intent and effect of this amendment was to require employers to provide reasonable accommodations. The Supreme Court in Filbrook, in footnote number one, said that the duty to reasonably accommodate – was imported into the statute, albeit awkwardly, by Congress in the definition of religion. So the Supreme Court has recognized two times, in Hardison and in Filbrook, that the intent of this language was to add a reasonable accommodation requirement to the already existing disparate treatment language. Right, but not differentiating between hiring and firing. In other words, the question is why Abercrombie wouldn't apply in the firing context as well, given that the definition of religion is the same whether it is hire or fire, and hire and fire are in the same prohibition. Well, I suppose it could apply if it's a context in which you had a situation where an employer is firing someone because they don't want to accommodate them. But when you have a situation in place which allows an employee to request reasonable accommodation, you're in a different framework. Let me ask you, if Abercrombie does apply and applies in the manner that this Court articulated in Lowman, do you win, do you lose, or should summary judgment have been denied? So I think if it applies, we still win because the key language is because of. The key language is because of. Was Jessica Bergen terminated because of her religious practice or belief? Yes, she was. The reason she was terminated is because she had a religious practice or belief that conflicted with the policy. They refused to accommodate her, and that's why she was fired. So they're still because of connection. Lowman is because of the desire to avoid the prospective accommodation. So how do you satisfy that here, given the evidence that your adversary pointed to, that the courts granted accommodations to hundreds and hundreds of people who asked for them? I think that language is ambiguous. What does that mean? I mean, obviously they wanted to avoid the accommodation because they denied it. They didn't have to deny it. They made a determination not to give her the accommodation, so there was some motive not to provide her with the accommodation. I think what they're trying to say is that unless there is really, in essence, some kind of broader discriminatory framework in play here, as long as we're dealing with neutral policies that are allegedly neutrally applied, then the losers of that procedure don't have a claim. And that is not the law, and that's not consistent with Abercrombie. Abercrombie is very clear that religion is treated differently, that it is entitled to special treatment, including reasonable accommodation. So it really is a much more narrow decision. What do you think the record shows as to why they requested additional information? Well, they requested additional information for anyone who articulated two different kinds of religious beliefs. If they articulated a religious belief relating to abortion stem cells, aborted stem cells, they wanted to question the person about, well, have you taken ibuprofen? Have you done all these other things that they believe are connected to aborted stem cells? So the purpose of that, as they said, is to test consistency and therefore, in their mind, sincerity. And you're challenging that writ large? That is to say they can't do that at all? No, we're not saying that. We're not challenging the procedures at all here. What we're saying is we're challenging the determination. We're saying their determination was wrong, and for us to prove that, what do we have to show? We have to show that, in fact, she had a sincerely held religious belief, but that religious belief, in fact, conflicted with the vaccine requirement, and that she, in fact, informed the employer of that conflict. Once the employer was notified of that conflict, there is a duty to reasonably accommodate, barring undue hardship. There's no undue hardship defense in this case. They refuse to accommodate. We say, therefore, we win. Every element of our prima facie case is established as a matter of law. Can I just press you on the, so to the extent you still think the informed prong remains in this context, that's your position? Absolutely. So if an employer terminates someone who they, let's say they're under the mistaken belief that a Jewish employee would need a religious accommodation for, sorry, let me rephrase. Let's say they assume a Jewish employee requires a religious exemption for the vaccination. The employee has never informed them of that, and then they terminate them. That employee hasn't made out the claim because they haven't informed the employer? Let me make sure I understand the hypothetical. The employer fires the Jewish employee because the employer believes the employee needs accommodation, but the employee doesn't, in fact, need one, hasn't requested one. Whether they need it or not, they've requested it, or they haven't requested it. Well, I think whether they need it or not is fundamental to that claim. Okay, so let's assume they need it. That he does need it? Yeah, but never informed. But somehow the employer… They just assumed it based on a view of Judaism. And you've established that the employer, in fact, made the decision for that reason. I think that employer would have a problem under that statute because they're making an adverse employment decision based on an employee's religious beliefs or practices. But they haven't been informed of the need for the accommodation. So how do you get around that problem? Well, in that case, this is just a straightforward wrongful termination case. It's not really a reasonable accommodation case because the employee didn't request an accommodation. So they would just be saying, you just upped and fired me for an invalid religious-based reason. Why did you do that? I should get my job back. The issue of accommodation is really separate in that case. The employee never even raised the issue of an accommodation. That's just a straightforward discrimination case. My headroom might be bad. I guess I'm trying to get to the Abercrombie situation. See, I don't think the two map. Judge Herman will give us a better… I mean, I don't know about that. But I think to try and pinpoint the accommodation, the argument would be, let's assume the evidence supports this, that the employer doesn't discriminate against Jews per se, but it's based on a mistaken belief that Jews will request an accommodation, and they don't want to give that accommodation. In other words, I mean, it's hard to imagine the set of facts that would pinpoint it that way, but that's the point. So, for example, an employer doesn't want to hire an observably Orthodox Jew because they are concerned they won't be able to work on the Sabbath. Is that the hypo? Yeah, or doesn't hire a hijab-wearing Muslim because they think it will conflict with the dress requirement. If the employer is making an adverse employment decision predicated on the employee or prospective employee's protected characteristic, that is a prima facie violation of Title VII, then the question is, was there some other kind of defense that would justify that decision? So in any of these hypotheticals, if the employer is looking at the employee or the prospective employee, and regardless of what the employee tells them, making an adverse decision based on their perception of that employee's religious beliefs or practices, that absolutely violates Title VII. And the same is true in the hiring context and in the termination context. Absolutely. That's disparate treatment discrimination under Title VII. And Abercrombie tells us it doesn't matter that the request was never made, right? In that case, because that was the specific issue in Abercrombie. Again, Abercrombie is cabined by the facts of that case. So in that case, obviously there was information in the record that the employer had a suspicion. That was the language I think used in the decision, a suspicion that she would need an accommodation. That was discussed with the higher-level people, and they said, I'm sorry, we can't give an accommodation, so don't hire her. So they were. So the question now was. So in the termination context, the same conversation happens. And they say, well, we want to impose a dress requirement, and we have a hijab-wearing employee, and we think she's going to request an accommodation. So we should terminate her because we can't accommodate that. If the employer is making an adverse employment decision based on its perception of the employee's religious beliefs or practices, that on its face violates Title VII. Does it matter in the termination context whether the employee is informed of the need for an accommodation or not? No, it doesn't, because, again, that's a separate issue. They're just looking at the employee and saying she's a Muslim, she might need an accommodation, we're going to fire her. But doesn't that suggest that the three-part test is wrong, that the second prong is not properly there in the wake of Abercrombie? I think that the. . . No, I don't think so, because I think we're, again, conflating two different frameworks. I think the reasonable accommodation, the duty to reasonably accommodate, again, Hardison and Philbrook, it's in the statute, the Supreme Court said it's in the statute. That is a different framework than hiring, firing, disciplining based on a protected characteristic. So depending on the framework you're in, what the employee has to prove to prove the case in court might be different. At the end of the day, what my client has to prove is I was employed by you, you had a policy, I couldn't comply with it because of a religious belief or practice, I told you about that, because the employer has to have some knowledge that the duty to accommodate is triggered, but you didn't accommodate me and instead you fired me, and that's a violation of Title VII. And every one of those elements in our case is established as a matter of law. All right. Thank you, counsel. Thank you. Do you have a view on whether this needs to be held for Bikert? I'm sorry? Do you have a view on whether this needs to be held for Bikert? Will this question be answered in Bikert necessarily? This did not come up in Bikert, and I don't know what's going on with Bikert. It's been a while. Welcome to Judge Herman's courtroom. Thank you. Can you point us to where in the record before the district court you disputed the first prong, the bona fide religious belief, and did you not answer an interrogatory quote that you did not contend that you lacked a bona fide good faith religious objection? Does that not constitute a forfeiture? It does not, Your Honor. And if you look at what we wrote in response to that contention interrogatory, and that is in the record at 168. If you look at the question before it, question 7, the one that plaintiff refers to, do you contend that plaintiff has a sincere religious bona fide belief? We say we do not contend. Please see our answer to the question before. Question number 6, and I'm paraphrasing, give all the reasons why you denied Ms. Bergen's application. We state very clearly. We denied her application because she didn't answer the questions and we didn't have enough information about it. They go hand in hand. A contention, not contending is not the same as conceding or admitting. Again, without the information, we could not make a position, state a position on the sincerity at the time. We cannot look at sincerity with hindsight now if it's been established during discovery or whatnot. The question was, what did the employer know about the sincerity at the time that the employer denied the request? And our position has been from our motion to dismiss at the very beginning of this case, we did not have enough information to make a determination about her request. Have you not forfeited the argument by not raising it on appeal? They go hand in hand. In answer to my question earlier, you argued that Judge Kogan erred in finding that Prong was satisfied but conceded that you didn't raise that on appeal. I don't think either party can address sincerity when the lack of information is there. It's always been about the lack of information. What I take issue with, what we take issue with, with Judge Kogan's decision is he says we conceded. Nowhere in the record do we concede that in your brief you make this argument in service of the argument that the second Prong is not satisfied. Again, they go hand in hand, and it's been reformulated since Abercrombie that the idea of the employee's religious belief, it's combined now. If the second Prong embeds that it's a required accommodation, I would think it's actually required. Yes. Right. So if we, if Lohman, I'll add the words actually required, that the employer's desire to avoid, Lohman says, the prospective accommodation. So I think what you're saying is that the employer's desire to avoid the actually required prospective accommodation was a motivating factor in an adverse employment decision.  And you're saying that it's the argument you've made below, it's the argument you've made here, and it's not a concession as to sincerity. It's absolutely not a concession. And I just want to be clear, although EEOC, the Supreme Court in the EEOC Abercrombie case, gets rid of the actual knowledge requirement, there has to be some sort of constructive knowledge. And constructive knowledge can be demonstrated in multiple ways. And if you accept Plaintiff's argument here, he's saying so long as an employee makes a religious accommodation request, the employer has to grant it except for undue burden. But that is not the entire test. The courts have always said that the employer gets to probe sincerity. There is a burden on the employee to demonstrate that they have a sincere belief and that it's consistently applied in their life. So I don't think this court has articulated, to the extent that there is any knowledge or constructive knowledge requirement, I don't think this court has articulated what the quantum of evidence has to be on that. Is that, A, first of all, is that correct? Yes. There has not been a quantum of knowledge, although, again, in Lowman, in Gurka, and even in Russo from this court, they say that there has to be some back and forth. The employee has to give some explanation of what the religious belief is and how it conflicts with the employer's policy. So I think the Ninth Circuit articulated that the test is whether the employer had, quote, enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements. Do you think that that's the correct standard? I can't say what the correct standard is. That is a very vague statement. Enough information could mean many different things. Again, you could give enough information. So you don't think it's the correct standard? I think part of whether or not there's enough information is has the employee undermined what they've said? You could give a long explanation of religious beliefs, but if you include with that explanation non-religious beliefs, you have undermined everything you've said. And how do you square that with the case law that I cited earlier, the mere fact that an employee cites religious and non-religious reasons doesn't vitiate the religious ones? I don't think that's accurate. Again, I go back to this Court's rulings in the Mason case, in the Krishna consciousness case, that say the employer or whoever's making the decision about the accommodation gets to probe, gets to figure out is this based on religion, a truly bona fide religious belief, or is there something more here? So you're saying there's a distinction between having both a religious belief and a non-religious belief and saying the non-religious belief means whatever the sincerity of the religious belief doesn't matter because you have non-religious belief. That we have cases that says, no, you can't do that. But you're saying to the extent a non-religious belief is offered, that can raise questions as to sincerity that were permitted to probe. Absolutely, Your Honor, absolutely. And that goes back 40 years to those cases from the 1980s. Can you give us the cites on those again? Sure. Krishna consciousness is 650 F. Second, 430. It's from this Court in 1981. The other one is Mason v. General Brown Central School District, which is 851 F. Second, 47. And you'll see there's a discussion at 5152 about essentially just because the applicant or the individual purports to have religious beliefs, there has to be an inquiry. There's allowed to be an inquiry into is this truly religious or is there something more here? It's always a little bit of a tell-to-me when someone raises a case at oral argument that they can cite in their briefs. Can you explain that? Because the quantum issue I didn't think was as important as it clearly is now. So it was not something we were focused on before. Only in preparing for today's argument, I realized that the quantum issue, going back and looking at plaintiff's papers, I knew that there would be questions about the quantum of sufficient information, which is not what our focus was before. So I apologize for that. But these are well-known cases, the Krishna consciousness cases, well-known and regularly cited by the courts in this circuit. Okay. Thank you, counsel. Thank you very much. Appreciate the arguments and briefing on both sides. The case is submitted and we'll take it under advisement.